[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiffs Edward C. Kawczak and Kimberly M. Kawczak appeal the decision of the defendant conservation commission affirming an order of the commission's agent to remove materials dumped by the plaintiffs on a regulated wetlands buffer area within property owned by the plaintiffs. The commission acted pursuant to Conn. Gen. Stats. sec. 22a-44. The plaintiffs appeal pursuant to Conn. Gen. Stats. sec. 42a-43. The court finds the issues in favor of the defendant commission.
As owners of the property which is the subject of the commission's order, the plaintiffs are aggrieved and have standing to bring this appeal.
The facts essential to the court's decision are not in dispute. The property in question is located on Glen Arden Lane in Enfield. The rear portion slopes toward an area adjacent to the Scantic River. Some years ago, a concrete retaining wall collapsed and the plaintiffs' yard began eroding down the bank. In an effort to halt the erosion, the plaintiffs began depositing material on the bank. It is this activity that is the subject of the commission's action in this case.
On January 24, 2000, following inspection of the property by the town's wetlands officer, acting as agent of the commission, the commission issued an enforcement order pursuant to Conn. Gen. Stats. sec. 22a-44 and applicable town regulations. The order states, "Large quantities of brush and wood chips were observed having been deposited over the edge of an embankment in immediate proximity to wetland soils and watercourses . . . This placement of biodegradable material in proximity to a watercourse will result in pollution as it decomposes." The order requires the CT Page 10332 plaintiffs "to remove all brush, wood chips and any other material used to fill the site and re-vegetate the slope." Finally, the order notifies the plaintiffs of a hearing to provide them an opportunity to show cause why the order should not remain in effect. The order further states that failure to comply will subject the plaintiffs to penalties pursuant to Conn. Gen. Stats. sec. 22a-44.
A hearing on the order was convened by the defendant commission on February 1, 2000. The plaintiffs appeared and presented testimony, as well as photographs of the property. Jay Northrup, the town wetlands agent, also appeared and testified in response to the plaintiffs' evidence and likewise provided photographs. The essence of the plaintiffs' testimony was that any fill added to the bank consisted mostly of "hard pan, mixed with some wood chips." Northrup testified that the property, although not itself wetlands, is located within 100' of the watercourse, thereby constituting a regulated buffer zone under the regulations. He also stated that his inspection revealed that the fill added by the plaintiffs was a "deep bed of chips." He stated, further, that "It is sluffing off. It is decomposing and it is potentially going to impact the river. . . ."
Following the hearing and discussion, the commission voted unanimously to leave the order in effect unless and until the plaintiffs submit an application for a permit to conduct activities within the regulated area. It is that decision which is the subject of this appeal.
In support of their appeal, the plaintiffs advance essentially four arguments: 1) that the plaintiffs' activities are permitted as of right under Conn. Gen. Stats. Sec. 22a-40 (a)(4); 2) that the town regulations regarding buffer areas are in conflict with the applicable state statute and are, therefore, unenforceable; 3) that even if the regulations are enforceable, there was insufficient evidence before the commission to enable it to find that the plaintiffs were in violation and 4) that the commission is estopped from enforcing its regulations against these plaintiffs.
 Conn. Gen. Stats. sec. 22a-40
This statute provides that "maintenance of existing structures and landscaping" on residential property located in a wetlands area is permitted as of right — that is, without the necessity of obtaining a permit — but this shall not include "removal or deposition of significant amounts of material from or onto a wetland or watercourse or diversion or alteration of a watercourse." Section 22a-40 (b)(1) includes a similar exemption for activities engaged in for the "conservation of soil." CT Page 10333
Since the plaintiffs' activities in this case were conducted on their residential property and intended for the maintenance of their dwelling and landscaping and the conservation of soil and since the activities did not involve the deposit of materials onto a wetland or watercourse, they argue that this statute insulates them from any regulation by the commission.
The plaintiffs offer no judicial authority for the theory, implicit in their argument, that these statutory provisions trump all other statutes and regulations that are applicable to the facts of this case, including especially Conn. Gen. Stats. sec. 22a-42a (f) and town regulations relating thereto, discussed below. Indeed, familiar principles of statutory construction require a more inclusive review of the applicable statutory and regulatory provisions. "We are obligated . . . to read statutes together when they relate to the same subject matter . . . This is because of the presumption that the legislature intended to create a harmonious body of law." (Citations and internal quotation marks omitted.) State v. State Employees Review, 239 Conn. 638, 653 (1997). Accordingly, although the provisions of Conn. Gen. Stats. sec. 22a-40 may be relevant to the plaintiffs' contentions in this case, they are not dispositive and must be considered in conjunction with other applicable statutes and regulations.
 Conn. Gen. Stats. sec. 22a-42a (f) and "Buffer" Regulations
All parties in the case concede, either by judicial admission in their pleadings and/or briefs or in the record, that the plaintiffs' activities in question took place in the buffer area adjacent to the wetlands and Scantic River watercourse. Furthermore, there is abundant, uncontradicted and substantial evidence in the record, including testimony and photographs, that supports the commission's findings in that regard.
Conn. Gen. Stats. sec. 22a-42a (f) provides, "If a municipal wetlands agency regulates activities within areas around wetlands or watercourses, such regulation shall (1) be in accordance with the provisions of the inland wetlands regulations adopted by such agency related to application for, and approval of, activities to be conducted in wetlands or watercourses and (2) apply only to those activities which are likely to impact or affect wetlands or watercourses." That is to say, a municipality may define buffer areas around wetlands and watercourses and may regulate any activities within those buffer areas which "are likely to impact or affect wetlands or watercourses."
In the court's view, this statute, sec. 22a-42a (f), is the controlling authority in resolving the issues in this case. As noted, this case CT Page 10334 involves activities conducted exclusively within a buffer area, the precise subject of those statutory provisions. Thus, it takes clear priority over the provisions of sec. 22a-40, which pertain to activities within the wetlands or watercourses themselves. There is, however, no necessary conflict between these statutes. Both statutes provide, in effect, that activities which impact or are likely to impact wetlands or watercourses are regulated and require a permit whether those activities are conducted in the wetlands or in buffer areas. They may be reasonably read together, therefore, in the context of this case, to permit an owner of residential property in a wetlands buffer area to conduct activities to maintain the landscaping and structures, as of right and without a permit, provided such activities do not involve the deposition of significant amounts of material that is likely to impact or affect wetlands or watercourses.
The plaintiffs point out that the town regulations, sections 2.1.s. and t., when read together, purport to empower the commission to regulate any activity within a buffer zone, regardless of its impact or lack thereof on wetlands. They argue that such a blanket prohibition violates Conn. Gen. Stats. sec. 22a-42a (f), which limits the municipality's regulatory power in buffer zones to activities that are "likely to impact or affect wetlands or watercourses." They argue, further, that this violation renders the commission's buffer regulations unenforceable in any case. In the court's view, this latter argument may not be sustained.
The plaintiffs surmise, probably correctly, that the town neglected to amend the regulations following the enactment of Public Act 95-313, which amended Conn. Gen. Stats. sec. 22a-42a by adding subsection (f), including the limiting language, as set forth above. On its face, therefore, the regulation exceeds the enforcement scope of the statute. Plainly, if the commission sought to regulate an activity in the buffer zone having no likelihood of impacting the wetlands, the statute would prohibit such regulation. But in this case, the commission is not seeking to prohibit the plaintiffs from conducting any activities within the buffer zone. Rather, the language of the enforcement order and the decision of the commission are completely clear that the basis of the commission's action is its conclusion that the plaintiffs' activities are likely to have an adverse impact on the wetlands and the watercourse. As interpreted and administered by the commission in this case, therefore, the regulations in question are consistent with the requirements of the statute.
The question remains whether there is sufficient evidence in the record to support the commission's finding that the plaintiffs' activities are "likely to impact or affect wetland or watercourses." The plaintiffs argue there is not. The court disagrees. CT Page 10335
A basic principle of administrative law is that the scope of the court's review of a decision by an administrative agency, such as the commission, is very limited. "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic facts and whether the conclusions drawn from those facts are reasonable. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Citations omitted; internal quotation marks omitted.) CadlerockProperties Joint Venture, L.P. v. Commissioner of Env. Protection,253 Conn. 661, 676, 757 A.2d 1 (2000).
Substantial evidence is "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . ." (Citations omitted; internal quotation marks omitted.) Id., 677.
"In challenging an administrative agency action, the plaintiff has the burden of proof. . . . The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. . . . [T]he plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision." (Citations omitted.) Samperi v. Inland WetlandsAgency, 226 Conn. 579, 587 (1993).
"In reviewing an inland wetlands agency decision made pursuant to the act, the reviewing court must sustain the agency's determination if an examination of the record discloses (substantial) evidence that support any one of the reasons given. . . . the credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency." (Internal quotation marks omitted.). Id. 587-588.
These familiar principles of our law present a formidable obstacle to the overturning by the court of the factual findings and conclusions of an administrative agency such as the defendant commission.
In the present case, the record reveals that the town wetlands agent, Jay Northrup, made several inspections of the property, testified before the commission and furnished photographs showing the slope of the land and the proximity to the river. He testified that he observed a large quantity of wood chips deposited on the slope, as well as brush and other debris. He stated that such materials decompose and endanger the waters. CT Page 10336 Although he did not use the specific words, "likely to impact or affect wetlands or watercourse," the C commission members could reasonably infer such likelihood. The plaintiffs also appeared before the commission and essentially attempted to contradict the findings and conclusions of the wetlands agent. But the commission was not bound to accept their conflicting evidence or to find that it diminished the evidence presented by Northrup. Rather, it was the duty of the commission members to weigh the various evidence and resolve any conflicts in reaching their ultimate decision.
The court concludes that the commission's implicit finding that the plaintiffs' deposit of wood chips and brush in the wetlands buffer area on their property was likely to impact the wetland and/or watercourse is supported by substantial evidence in the record. The court must affirm the commission's decision, therefore, notwithstanding the contrary evidence presented by the plaintiffs.
 Estoppel
The plaintiffs contend that the commission is estopped from enforcing the regulations against them because of prior statements and inaction by town and state officials. Specifically, the plaintiffs point out that town and state officials have been aware that the plaintiffs have been depositing materials in the area in question since 1991 but have not taken any steps to prohibit them until December 1999, when the present proceedings commenced. The plaintiffs testified at the hearing that they had asked the town's zoning enforcement officer whether there was a problem and received assurances that there was none. The also testified that they had consulted an official in the forestry division of the state department of environmental protection, who indicated that the department was not concerned. Neither plaintiff ever applied for a permit from the commission nor did either ever informally request information or advice. Plaintiff Kimberley Kawczak testified that she was not even aware that the conservation commission existed until these proceedings were initiated. The plaintiffs allege, and there seems no dispute, that removal of the material at this time would incur expenses.
A municipality may be estopped from enforcing its regulations only in special circumstances. The property owner aggrieved by the enforcement action has the burden of proving that these circumstances exist in the particular case. Bauer v. Waste Management of Connecticut, Inc.,234 Conn. 221, 246-247 (1995). The Supreme Court summarized the applicable law as follows:
 To summarize, in order for a court to invoke municipal estoppel, the aggrieved party must establish that: (1) CT Page 10337 an authorized agent of the municipality had done or said something calculated or intended to induce the party to believe that certain facts existed and to act on that belief (2) the party had exercised due diligence to ascertain the truth and not only lacked knowledge of the true state of things, but also had no convenient means of acquiring that knowledge; (3) the party had changed its position in reliance on those facts; and (4) the party would be subjected to a substantial loss if the municipality were permitted to negate the acts of its agents. Id., 247.
Applying these familiar principles to the facts of the present case, it is clear that the plaintiffs have not established that the commission should be estopped from enforcing the wetlands regulations with regard to their property.
First, no authorized agent of the town — that is, no representative of the conservation commission, which is responsible for enforcing these regulations — ever said or did anything to induce the plaintiffs to believe that they could dump wood chips and brush in the buffer area without a permit. The officials to whom the plaintiffs did talk had no authority or responsibility in the matter. Second, the plaintiffs did absolutely nothing to learn what their rights and obligations were, although a simple phone call or visit to the commission office or town wetlands agent would have apprised them of their position. And, obviously, if the plaintiffs had applied for a permit to deposit the fill, the commission would have given an authoritative response. Finally, although it is probable that the plaintiffs will incur some expense in removing the fill, they presented no evidence as to the extent of that expense and they did not, therefore, prove that they would sustain a "substantial loss" in complying with the commission's order.
For all of the reasons set forth above, the plaintiffs' appeal is dismissed.
Maloney. J.